IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY BURTON, | No. 4:22-CV-00820 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

S<small>EPTEMBER</small> 14, 2022

Plaintiff Tony Burton was previously imprisoned at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville). Burton is no longer incarcerated. He filed the instant *pro se* Section 1983[1] action claiming that prison officials violated his constitutional rights and committed various state-law torts. Presently pending is Defendants' unopposed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

**I.    BACKGROUND**

The gravamen of Burton's complaint concerns the photocopying and transmission of nonprivileged financial information—including bank statements

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

and correspondence from the Internal Revenue Service (IRS)—through Smart Communications. Under current Pennsylvania Department of Corrections (DOC) policy, nonprivileged mail must be sent to inmates through contractor Smart Communications, which then makes photocopies of the correspondence and forwards those copies to the inmates at their facilities of incarceration.[2]

In his complaint, Burton first mentions a bank statement that was returned to its sender in late October 2018 because it was not mailed to Burton through Smart Communications.[3] He does not explain how a nonprivileged letter being returned to a financial institution violated his constitutional rights or state tort law.[4]

Burton next alleges that in May 2021 he received information from the IRS that was copied by the prison and forwarded to him.[5] The following month, he received a bank statement from his credit union that was copied and "wedged" in the door of his cell.[6] Burton alleges that these documents contained his "personal

---

[2] Department of Corrections' policy DC-ADM 803 provides that "[a]ll incoming, non-privileged inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate mail processing center," which is the Smart Communications center located in St. Petersburg, Florida. Privileged mail may be sent directly to the inmate at the institution where he is housed. Incoming privileged mail includes, *inter alia*, mail from a court as well as "[m]ail from an inmate's attorney that is either hand-delivered to the facility by the attorney or delivered through the mail system and identified with a control number issued to the sender by the Department's Office of Chief Counsel." COMMONWEALTH OF PA., DEP'T OF CORR., POLICY NO. DC-ADM 803 § 1(A)(3), (D) (2020) [hereinafter "DC-ADM 803"].
[3] Doc. 1-1 ¶ 14.
[4] Moreover, as Defendants correctly point out, any claim regarding this incident is long-since barred by the two-year statute of limitations for Section 1983 and tort claims in Pennsylvania. *See Garret v. Wexford Health*, 938 F.3d 69, 84 n.19 (3d Cir. 2019) (citing *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)); 42 PA. CONS. STAT. § 5524(7).
[5] Doc. 1-1 ¶¶ 20-21.
[6] *Id.* ¶¶ 25-26.

PIN number [sic], social security number, home address[,] and tax information."[7]

Burton filed a request and a grievance, respectively, about the May and June 2021 incidents, but those administrative filings were denied.[8] In the denials, Burton claims that he was informed that the prison mailroom was simply following DOC policy and the "direction of Central Office" by providing him with copies of the nonprivileged financial correspondence.[9] Burton does not allege whether he appealed the grievance denial to the Facility Manager or to final appeal with the Secretary's Office of Inmate Grievances and Appeals.[10]

On October 22, 2021, Burton's sister received a text message from his credit union indicating that $250.00 had been withdrawn from Burton's account.[11] Four days later, his sister filed a "fraudulent activity" complaint with the credit union, and the $250.00 was refunded approximately two weeks later.[12] According to Burton, "[t]he person responsible for the unauthorized withdrawal was neither apprehended nor identified."[13]

Burton initially filed suit in April 2022 in the Court of Common Pleas of Schuylkill County, Pennsylvania.[14] Defendants removed the case to this Court.[15]

---

[7]  *Id.* ¶ 27
[8]  *Id.* ¶¶ 23-24, 28-30.
[9]  *Id.* ¶¶ 24, 30.
[10] *See* COMMONWEALTH OF PA., DEP'T OF CORR., POLICY NO. DC-ADM 804 § 2 (2015).
[11] Doc. 1-1 ¶¶ 31-32.
[12] *Id.* ¶¶ 33-34.
[13] *Id.* ¶ 35.
[14] *See generally* Doc. 1-1.
[15] Doc. 1.

Burton names as defendants the DOC, Kathy Brittain (Facility Manager), T. Kelly (mailroom personnel), Faith Walter (mailroom supervisor), and Jennifer Newberry (grievance coordinator).[16] He asserts claims under the First, Fourth, and Fourteenth Amendments of the United States Constitution; Article 1 of the Pennsylvania Constitution; and state-law tort claims.

Defendants move to dismiss Burton's complaint in its entirety.[17] Burton has failed to respond in any way to their Rule 12(b)(6) motion. The time for briefing has passed, so the unopposed motion to dismiss is ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[18] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[19] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[16] Doc. 1-1 ¶¶ 4-8.
[17] Doc. 4.
[18] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[19] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[20]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[21] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[22] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[23] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[24] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[25]

Because Burton proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[26]

---

[20] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[21] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[22] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[23] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[24] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[25] *Iqbal*, 556 U.S. at 681.
[26] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## III. DISCUSSION

Defendants attack the sufficiency of Burton's complaint on numerous grounds. Defendants argue, among other things: (1) failure to exhaust administrative remedies, (2) lack of personal involvement, (3) expiration of the statute of limitations, (4) state statutory sovereign immunity, (5) failure to state a claim under the Pennsylvania Constitution, and (6) qualified immunity. The Court agrees that Burton's claims are deficient for multiple reasons.

### A. Claims Against the DOC

Initially, the Court finds that the claims asserted against the DOC fail. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law."[27] Only "persons" are subject to suit under Section 1983; state agencies such as the Pennsylvania DOC do not qualify.[28] The Court further observes that suing a state agency under Section 1983 is akin to suing the state itself, and such damages

---

[27] *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (emphasis added) (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).

[28] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983 purposes); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (explaining that a state agency may not be sued under Section 1983 because it is not a "person"); *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential) (dismissing Section 1983 claims against prison and Department of Corrections because they "are not persons subject to suit under" Section 1983).

claims are barred by Eleventh Amendment sovereign immunity.[29]  Accordingly, any claims against the DOC will be dismissed with prejudice for failure to state a claim for relief.[30]

## B. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[31]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[32]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[33]  It is equally established that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[34]

---

[29] *See Harper v. Jeffries*, 808 F.2d 281, 284 n.4 (3d Cir. 1986) (noting that any Section 1983 action by prisoner against Pennsylvania Parole Board is barred by eleventh amendment); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar [against civil rights suits in federal court targeting a state] extends to suits against departments or agencies of the state having no existence apart from the state."); *Foye*, 675 F. App'x at 215.

[30] Burton has not included any allegations that would implicate the DOC itself—as opposed to its employees—being sued for committing state-law negligence. *See, e.g.*, *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996) (explaining difference between "corporate liability" asserted against institution itself and *respondeat superior* liability based on negligent actions of institution's employees).

[31] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[32] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[33] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[34] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance");

7

As previously explained, any claim for the October 2018 incident involving defendants Newberry and Brittain[35] is facially barred by the statute of limitations.[36] Furthermore, the only alleged personal involvement in this event by Newberry and Brittain is during the post-incident grievance process, which cannot be the basis for Section 1983 liability.

The same reasoning applies to defendants T. Kelly and Faith Walter, whose only alleged involvement in the May and June 2021 incidents was their handling of Burton's informal request and formal grievance related to these incidents.[37] Neither Kelly's nor Walter's involvement in the post-incident grievance process implicates a constitutional violation, thus the allegations against them cannot support a Section 1983 claim.

None of Burton's allegations plausibly state personal involvement by any Defendant in a claimed constitutional violation. Without such factual averments, Burton cannot maintain a Section 1983 claim against any individual Defendant.

---

*Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

[35] Doc. 1-1 ¶¶ 14-19.
[36] *See supra* p. 2 & n.4.
[37] *See* Doc. 1-1 ¶¶ 20-30.

## C.   Constitutional Claims Regarding DOC Mail Policy

Even if Burton had included allegations of personal involvement in executing the DOC's mail policy or if his complaint could be construed as challenging the constitutionality of that policy, Burton fails to state a claim for relief.

First, Burton has not stated a First Amendment violation regarding freedom of expression or use of the mail.  As thoughtfully explained in *Smith v. Wolf*,[38] the DOC's mail policy is "reasonably related to legitimate penological interests"[39] and does not unconstitutionally infringe on inmates' First Amendment rights.[40] Moreover, the United States Court of Appeals for the Third Circuit, albeit in a nonprecedential decision, has already denied the plausibility of a First Amendment claim similar to Burton's instant challenge to DC-ADM 803.[41]  Burton has not explained or alleged how his First Amendment rights were otherwise infringed, thus any general challenge to DC-ADM 803 or to its administration by prison officials fails.

Burton also fails to state a Fourth Amendment claim.  The Fourth Amendment to the United States Constitution, in pertinent part, protects against

---

[38]   No. 3-19-CV-0711, 2020 WL 4551229, at *6-8 (M.D. Pa. Aug. 6, 2020).
[39]   *Id.*, at *6-7 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).
[40]   *Id.*, at *7-8.
[41]   *See Pelino v. Wetzel*, No. 21-1363, 2022 WL 1239050, at *1-2 (3d Cir. Apr. 27, 2022) (nonprecedential).

"unreasonable searches and seizures."[42] However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells[.]"[43] Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.[44] Again, Burton does not explain how his Fourth Amendment rights were purportedly violated, but any such assertion involving the opening and copying of nonprivileged financial mail does not plausibly state a claim for relief.[45]

Burton additionally references the Fourteenth Amendment, but he does not describe the purported violation or state how the violation occurred. To the extent that Burton's complaint could be construed as raising a Fourteenth Amendment claim of deprivation of property without due process of law, that claim is equally flawed. This constitutional tort has significantly limited application in the prison system. Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."[46]

---

[42] U.S. CONST. amend IV.
[43] *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration.").
[44] *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).
[45] *See Robinson v. Pa. Dep't of Corr.*, 851 F. App'x 289, 293 (3d Cir. 2021) (nonprecedential) (holding that DOC's mail policy does not amount to a Fourth Amendment violation).
[46] *Hudson*, 468 U.S. at 533.

Burton's complaint is silent as to whether adequate state post-deprivation remedies exist for the "seizure" and copying of his personal financial information, but the Court notes that state tort law likely provides a remedy if Burton is somehow asserting that his personal property was unlawfully taken.[47] The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for claims like those asserted here, even if the plaintiff disagrees with the results.[48] Thus, if Burton is attempting to assert a Fourteenth Amendment deprivation-of-property claim, that claim fails and must be dismissed with prejudice.[49]

In sum, none of the constitutional provisions Burton references provides a basis for relief under the facts alleged.[50] Thus, even if Burton had properly pled personal involvement, he still has not identified a constitutional violation.

---

[47] *See* 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); *see also Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies).

[48] *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).

[49] If Burton is attempting to raise some other Fourteenth Amendment claim, like deprivation of a liberty interest in corresponding by mail, such a claim likewise fails. *See Pelino*, 2022 WL 1239050, at *2.

[50] This includes Burton's claims under Article 1 of the Pennsylvania Constitution, which are frequently interpreted coextensively with federal law. Furthermore, the Superior Court of Pennsylvania has held that inmates do not have a privacy interest in nonprivileged mail under Article 1, Section 8 of the state's constitution. *See Commonwealth v. Moore*, 928 A.2d 1092, 1102 (Pa. Super. Ct. 2007).

### D. State-Law Claims

Burton alleges that Defendants' actions constitute common law negligence and other torts.[51] These state-law claims are barred by Pennsylvania's statutory sovereign immunity.

Commonwealth parties acting within the scope of their employment generally are immune from suit except when immunity is explicitly waived.[52] Pennsylvania's General Assembly has carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors.[53] Section 8522(b) of Title 42 of the Pennsylvania Consolidated Statutes provides ten narrow categories[54] where the state has waived its sovereign immunity for claims involving negligent conduct by Commonwealth parties.[55] This state statutory immunity applies to both negligent and intentional torts committed by Commonwealth actors.[56]

---

[51] See Doc. 1-1 ¶¶ 36-41. In addition to negligence, Burton asserts torts of "official oppression" and "unlawful duplication," but does not explain what these torts are or even provide the bare elements of the claims. The Court is unaware of any Pennsylvania tort claim of "official oppression" or "unlawful duplication." To the extent that there may be such a claim (or something remotely similar) under Pennsylvania law, it would be barred by state statutory immunity as described herein.

[52] See 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521, 8522(a).

[53] See generally 42 PA. CONS. STAT. §§ 8521, 8522.

[54] The ten exceptions set forth in 42 PA. CONST. STAT. § 8522(b) concern: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.

[55] See id. § 8522(a), (b).

[56] See La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

Burton has not offered any rebuttal to Defendants' argument that his tort claims are barred by state statutory immunity. Therefore, as it plainly appears from the complaint that Defendants were acting within the scope of employment and no exception to immunity applies, the Court must dismiss the common law tort claims as barred by Pennsylvania statutory sovereign immunity.

### E.     Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[57] Here, Burton's claims are incapable of amendment, so granting leave to amend would be futile. The substance of Burton's claims—allegedly improper photocopying of nonprivileged financial information by the DOC through Smart Communications pursuant to DC-ADM 803—simply does not implicate a constitutional violation or state-law tort. Moreover, Burton has neither responded to Defendants' motion to dismiss nor has he sought leave to amend. Consequently, Burton's complaint will be dismissed and leave to amend will be denied.

---

[57] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' unopposed motion to dismiss (Doc. 4) under Federal Rule of Civil Procedure 12(b)(6). An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge